Argued September 6, affirmed November 6, 1963

# DEAN *v.* POOLE

386 P. 2d 453

*Randolph Slocum,* Roseburg, argued the cause for appellant. On the brief were Horn & Slocum, Roseburg.

*Paul E. Geddes,* Roseburg, argued the cause for respondent. On the brief were Geddes, Felker, Walton & Richmond, Roseburg.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN, GOODWIN and LUSK, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment which the circuit court entered in favor of the defendant after the jury had returned its verdict—likewise for the defendant. After the entry of that judgment the plaintiff moved for a judgment in his favor notwithstanding the verdict or in the alternative for a new trial. The alternative motion was based upon contentions that the trial judge erred when he (1) denied the plaintiff's motion for a directed verdict, (2) omitted to instruct the jury that a violation of a motor vehicle statute is negligence per se, and (3) declined to give to the jury five instructions requested by the plaintiff which pertained to damages.

Both the motion for a new trial and the one for the award of judgment notwithstanding the verdict were denied. The motion by the plaintiff for a directed verdict, which we have mentioned, had already been denied.

The first assignment of error reads:

"The trial court erred in denying plaintiff's motion for a directed verdict."

The plaintiff's brief submits several propositions in support of the above assignment of error; the three that we deem material are:

"* * * every driver must keep such lookout as a reasonably prudent and cautious person would keep under the same or similar circumstances.
      *         *         *

"One cannot say that he kept a careful lookout, looked carefully for approaching traffic and yet did not see that which was in plain sight.
      *         *         *

"* * * ORS 483.206, requiring automobiles approaching an arterial highway from a private driveway to yield right-of-way to all vehicles approaching on such highway makes it clear that the legislature intended that a stop must be made where an adequate view is obtainable. * * *"

ORS 483.206 reads:

"The driver of a vehicle entering a public highway from a private road or drive shall stop and yield the right of way to all vehicles approaching on such public highway, except where traffic control signals or other traffic control devices required and installed by the commission, or pursuant to the order of the Public Utility Commissioner, indicate that the driver may proceed without stopping."

We will now give a review of the essential parts of the evidence. Since the case is before us upon a challenge by the plaintiff to an order of the circuit court which denied the plaintiff's motion for a directed verdict, we will, of course, give the version of the evidence which is most favorable to the defendant. Our

purpose will be to determine whether the evidence rendered it inevitable that the plaintiff was entitled to judgment, or whether it also offered a version under which a jury could find, as the one in this case actually did, in favor of the defendant.

The plaintiff, at the time of his injury, was riding in an automobile driven by his brother, Billy Dean, to which we will refer as the Dean car. It was proceeding north at a speed of 35 miles per hour upon a road in Douglas County known as Glenbrook Loop Road. The latter was paved to a width of 19 feet. The Dean car collided with one operated by the defendant at or near a private driveway which was to the right of the plaintiff; that is, the driveway entered the road from the east. It was a graveled road 12 feet wide near the defendant's home which stood 60 to 65 feet east of the road and adjacent to the driveway. The driveway broadened to a width of 36 feet where it neared and entered the road. One standing at the place where the driveway merged into the road could see south down Glenbrook Loop Road 465 feet. A moderate curve in the road to the west prevented a view for a greater distance. The Dean car was approaching the driveway from the south. A driver proceeding north on Glenbrook Loop Road, the direction in which the Dean car was going, could see into the private driveway for at least 20 or 30 feet. September 3, 1960, at about noon when the air was dry and there were no obstructions to visibility, the Dean car, as we said, was approaching the driveway at a speed of 35 miles per hour. About the same moment the defendant was backing his car—a small car of foreign manufacture—along the driveway from his home toward the road. Billy Dean did not see the defendant's car until the

plaintiff cried out a warning. He testified, "I couldn't have been more than 15, 20 feet" from the defendant's car when he saw it. The defendant did not see the Dean car before the impact. The facts so far mentioned are free from controversy.

The plaintiff's brief states:

"* * * The facts that the defendant pulled his automobile onto the highway from a private driveway and that a collision resulted with another car driving on the highway at a lawful speed would lead unerringly to the conclusion that he had not maintained a lookout for all vehicles immediately approaching * * *."

That in brief form expresses the plaintiff's basis for a reversal.

We have mentioned that the driveway is 36 feet broad at the place where it merges into the road and that the driveway is gaveled. A photograph of the part of the driveway adjacent to the road indicates that the gravel is very small and compacted in a manner similar to that of the shoulders of our highways. The plaintiff's brief explains,

"In the southeast quadrant of the intersection there was a shoulder along the east side of Glenbrook Loop where the mailbox of defendant was situated. This shoulder was about 9 feet wide and was a part of the roadway maintained by Douglas County. Testimony reflects that there was ample room on this shoulder for an automobile to park without any part of it protruding onto the surfaced portion of the road."

The plaintiff concedes that at the place where the driveway entered the road it was 36 feet wide. The graveled surface of the southeast quadrant, as the

language just quoted states, was 9 feet broad (east to west).

A minute or so before the impact the defendant entered his automobile which stood upon the driveway beside his home. He testified that he intended to back his car westerly upon the driveway until he neared the road and then turn his car into a southerly direction so that its front would face north. After he had accomplished that operation he intended, according to his further testimony, to drive north toward Riddle. It will be recalled from the excerpt which we took from the plaintiff's brief that the southeasterly quadrant of the driveway consists of a graveled area nine feet wide sufficient in size to accommodate an automobile. The defendant intended to back into that area and in so doing turn his car until it was approximately parallel with the pavement. The defendant, referring to the quardant described in the plaintiff's brief, testified: "There was plenty of room to back up there."

The defendant swore that as he stood beside his car near his house before proceeding to back up he could look south along Glenbrook Loop Road about 400 yards. He added that no vehicle was in sight moving north—the direction which he planned to take. Upon entering his car he looked again—so he swore. This time he saw a car approaching from the north but saw nothing moving north. He then proceeded to back toward the road, but stopped at his property line which he said was "fifteen or twenty feet" from the east edge of the pavement. He swore that when he reached that place he stopped and looked in both directions. According to him, no car was in sight except the one already mentioned which was moving south. The defendant stated that the place where he stopped

afforded him a good view south along the road for about 465 feet. After taking his view the defendant, according to his further testimony, continued to back and in so doing turned into the mailbox area, 9 feet wide, that we have mentioned. He claimed that he thereby placed his car virtually parallel with the pavement and facing north (toward Riddle). He stated that when he had completed his backing his left rear wheel may have been slightly on the pavement. His words were, "I might have had my back wheel onto the pavement, I don't know."

Having completed his backing up process and having turned his car so that it faced north, the defendant shifted into low gear and proceeded north. We now quote further from the testimony given by him:

"A I put it in low and started to crank the wheels so I could go ahead and pull up onto the pavement.

"Q Did you go ahead?
"A I did.

"Q How far did you get before the impact took place?

"A Just at the far—just at the—I guess it would be the east side of the driveway, east or north side of the driveway.

"Q Side of the driveway toward Riddle?
"A Yes.

"Q All right. Do you know how far that is across there from the place where you stopped and started forward to the point where the impact took place?

"A Thirty-six feet.

"Q How do you know that?
"A I stepped it off."

When the impact occurred the two left wheels of the defendant's car were on the pavement, according to his testimony. He thought that they were about two feet from the latter's edge.

The impact consisted of the right side of the Dean car coming into contact with the left tail light of defendant's. As we observed, the driver of the Dean car conceded that he did not see the defendant's car until an instant or so before the impact. The defendant admitted that he did not see the Dean car. We have mentioned that there was no obstruction to visibility for a distance of 465 feet for a person who stood in the driveway near the road and who looked to the south. The record affords no expressed explanation for the failure of either driver to have seen the other's car until too late.

From the above we observe that the jury could have found that the defendant had completed his backing and turning operation before the collision occurred. In fact, it could have found that he had actually stopped his car for an instant in a safe place beside the road. That place was nine feet wide. Then he proceeded forward and had moved ahead, so he swore, 36 feet before the collision occurred. Since the driveway was 36 feet wide at that point, the evidence just mentioned could have warranted a finding that the defendant had traveled the width of the driveway and had virtually left it before the impact took place.

The evidence indicates that the right side of the Dean car, back of its right door, and the left tail light of the defendant's car were the only parts of the two vehicles that showed marks of a collision. The right side of the Dean car, beginning about two inches back of the door, shows the effect of a scraping as though

it had scraped upon some object. The left tail light of the defendant's car was broken.

The plaintiff and his brother testified that when the latter belatedly saw the defendant's car he undertook to veer his car to the left. It may be that in a movement to the left the Dean car could have scraped the defendant's left tail light, but that is by no means the only way in which the impact can be accounted for. It is reasonable to infer that while the Dean car was proceeding north its right side scraped the left tail light of the defendant's car while the latter was also proceeding north.

■ Well established rules of law render it impossible to attribute Billy Dean's negligence, if any, to the plaintiff.

The defendant frankly conceded that he did not see the Dean car before the impact. It may be that in the defendant's backing up movement which followed the view which he said he took near the road, and his subsequent movement ahead, the Dean car came into view, but too late for the defendant to have seen it. The defendant's movement was much slower than that of the Dean car. Whether or not the explanation just suggested accounts for the defendant's failure to have seen the Dean car we do not know, but the evidence above mentioned could reasonably have induced the jury to find that the defendant's failure to have seen the Dean car was not the cause of this accident. The plaintiff claims that the defendant should have seen the Dean car while the defendant was backing out of the driveway and that he should have then yielded to the Dean car the right of way. The foregoing facts indicate that the collision occurred after the defendant had completed his backing up

process, had turned his car, was moving ahead and was beyond the driveway. The defendant left available for the Dean car ample space in the right lane of the paved part of the road.

■ The evidence above mentioned could support a finding that Billy Dean's failure to have seen the defendant's car—which was ahead of him moving in the same direction as his car and which was moving at a low rate of speed partly off the pavement—was the sole cause of this accident. There was ample space to the left of the defendant for the use of the Dean car.

■ It will be remembered that the issue which we are considering was presented by the plaintiff's motion for a directed verdict. The trial judge, in ruling upon that motion, was not compelled to accept the plaintiff's version of how the collision occurred. The foregoing version was also available, and it was the duty of the court to view the evidence in the light favorable to the defendant.

We dismiss the assignments of error as lacking in merit. Neither the motions made by the plaintiff for a directed verdict nor the challenge to the judgment through a motion for judgment notwithstanding the verdict and in the alternative for a new trial possess merit. The judgment of the circuit court is affirmed.